## CIRCUIT COURT OF SMYTH COUNTY

K. A. M.

v.

Virgil J. Miller, Director
Department of Social Services

March 29, 1990

Case No. 3028

By JUDGE CHARLES H. SMITH, JR.

This matter came on today to be heard upon argument of counsel on the petitioner's "Petition for Writ of Mandamus." The petitioner is the subject of a "founded" child abuse complaint. She is aggrieved by that decision and is seeking redress through the administrative appeals process. She has now advanced to the hearing stage before the Commissioner's designated hearing officer. The matter was scheduled for a hearing, and, at a pre-hearing conference with all parties present, complaint was made by the petitioner as to the inadequacy and incompleteness of the records she had been provided by the respondent. The hearing officer was apparently requested to compel the production of the additional information but declined to do so citing a lack of authority. Thus, this action was initiated. The procedural posture of this matter is apparently not in dispute.

The petitioner specifically contends that her investigation reveals the existence of certain documents relative to this matter, which are a part of the agency file and of which she has not been furnished a copy. Further, she contends that she is entitled to and has not received a copy of the child care center's report concerning the alleged incident of child abuse. Finally, she contends

that the agency's "Child Protective Service Investigation Report," which she did receive a copy of is incomprehensible due to the extensive "whiting out" of the text. A copy of this report was filed and made a part of the record at the hearing. The petitioner also contends that she is entitled to the identity of any collateral sources of information obtained by the social worker during her investigation and used in her report.

The issue, of course, is whether the petitioner is entitled to this information and whether the respondent can be compelled to furnish same. I believe the issue can be resolved by a close reading of and application of the Virginia Child Abuse and Neglect Law (§ 63.1-248.1 et seq. of the Code) and the administrative regulations promulgated thereunder and the Virginia Privacy Protection Act (§ 2.1-377 et seq. of the Code). Initially, it should be noted that, pursuant to § 2.1-386 of the later act, this action is properly cognizable by this court.

Section 2.1-379 of the Privacy Protection Act defines "data subject" as: "An individual about whom personal information is indexed or may be located under his name, personal number, or other identifiable particulars, in an information system." That same section defines "personal information" as: "All information that describes, located, or indexes anything about an individual, including his . . . criminal or employment record or that affords a basis for inferring . . . things done by or to such individual . . . ."

Obviously, the petitioner herein is a "data subject," and the information she seeks is "personal information." In what I would call the preamble to this act, the General Assembly has found: "That an individual's opportunities to secure employment, insurance, credit, and his right to due process and other legal protections are endangered by the misuse of certain of these personal information systems; that in order to preserve the rights guaranteed a citizen in a free society, legislation is necessary to establish procedures to govern information systems containing records on individuals." Consistent with those findings, § 2.1-382 provides as follows:

A. Any agency maintaining personal information shall . . . .

3. Upon request and proper identification of any data subject, or of his authorized agent, grant such subject or agent the right to inspect, in a form comprehensible to such individual or agent:

(a) All personal information about that data subject . . . .

(b) The nature of the sources of the information.

This section goes on to describe the procedures to be utilized by a "data subject" for inspecting these records and even provides for copying same. Further, the administrative regulations promulgated by the State Board of Social Services in conformity with the Virginia Child Abuse Law, in the section dealing with these appeals, provides as follows: "Prior to the informal conference, the appellant shall have the opportunity to review the record pursuant to the Virginia Privacy Protection Act of 1976." I believe the clear intent of these statutes and regulations is that the "data subject" be given fair, reasonable, and meaningful access to the agency records. Such access can hardly be any of these if it is incomprehensible, illegible, or incomplete. I can think of no situation in which the right to review one's "personal information" gathered by an administrative agency can be more important than in a situation such as this. The taint of being labeled a child abuse is devastating in today's society, particularly for one in the petitioner's position. It can have far-reaching and long-lasting effects. Even an accused felon is entitled to more evidentiary latitude and basic due process than one in the petitioner's situation. She has only the cold, stark record to review and can only hope that a comprehensive investigation of it will reveal some inaccurate or irrelevant material that might entitle her to have the record purged. Thus, the importance of her being able to have access to the entire record cannot be overstated.

However, the fact that the petitioner may be entitled to scrutinize the entire record does not mean that she is entitled to the identifying information contained

therein. Obviously, she is not entitled to know the identity of the complainant and, in my estimation, is not entitled to know the identity of any collateral sources used in the investigation. The respondent points to an opinion by the Attorney General rendered in May, 1988, in support of his position that the names of individuals providing such collateral information need not be disclosed to the alleged abuser. I would note that this position does appear to be at odds with the respondent's state policy adopted on the subject as contained in their handbook. *See* Volume VII, Section III, Chapter A, page 56, of the handbook. Nevertheless, I do agree that only the nature of the information source need be divulged. Obviously, there may be many things in the record obtained from collateral sources that may necessarily reveal the identity of the source. The respondent will need to put this information in some intelligible form that will provide a meaningful review by the petitioner. I believe the respondent, in argument, indicated a willingness to do this.

Finally, the respondent contends that their record, due to error, contains information gathered by the licensing division of the Department of Social Services, which is irrelevant to this inquiry and need not or should not be divulged to the petitioner. The respondent requests that this be removed from the record and returned to the licensing division. The petitioner objects to such removal. It would appear that the respondent and the licensing division are in clear violation of the Privacy Protection Act by having allowed that information to be placed in the record to begin with. Section 2.1-378(9) provides: "There shall be a clearly prescribed procedure to prevent personal information collected for one purpose from being used for another purpose." The respondent maintains that this information was supplied to the record only after the founded abuse decision was made. Whether used or not used, it has now become a permanent part of the record in this matter and shall remain with it and be subject to review by the petitioner subject to the limitations stated herein.